**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

COURTNEY SMITH, ADC #149926                                                                          PLAINTIFF

v.                                            NO. 4:14CV00753 JLH

KENNETH R. HARNESS, Police Officer;
JUAN MATUS, Police Officer; and
JACKSONVILLE POLICE DEPARTMENT                                                            DEFENDANTS

**OPINION AND ORDER**

Courtney Smith brings this action against the Jacksonville Police Department and two of its officers, Kenneth R. Harness and Juan Matus,[1] alleging claims for false arrest, wrongful detention, due process violations, false imprisonment, defamation, and outrage. He seeks damages and release from prison. The defendants have moved for summary judgment and Smith has responded. For reasons that will be explained, the defendants' motion for summary judgment is granted.

**I.**

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict

---

[1] Matus is no longer employed by the Jacksonville Police Department. Document #85-6 at 1.

in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id.*

Local Rule 56.1 provides that a party moving for summary judgment must annex to the motion a separate, short and concise statement of the material facts as to which it contends that there is no genuine issue to be tried. The rule adds that a nonmoving party who opposes the motion must file a separate, short and concise statement of the material facts as to which it contends a genuine issue exists to be tried. Any material facts stated by the moving party are deemed admitted unless controverted by the statement filed by the nonmoving party. Here, Smith has failed to controvert most of the facts stated in the defendants' statement of material facts as to which there is no genuine issue to be tried. The facts that he has not controverted are deemed admitted.

**II.**

Smith was arrested by Harness and Matus on the evening of June 9, 2014. He was charged with refusal to submit to a breathalyzer test, driving on a suspended license, leaving the scene of an accident, driving while intoxicated, disorderly conduct, and careless or prohibited driving. He pled no contest to each of these misdemeanor charges in the District Court of Jacksonville, Arkansas, and was found guilty on each charge. Document #78-1. He appealed to the Circuit Court of Pulaski County, where the State dismissed all of the charges. Document #71-10. A docket entry indicates

that the State informed the court and the defense that *Brady v. Maryland* issues surrounding a different case undermined the principal charge of DWI. *Id*.

Smith was on parole at the time of his arrest. His parole was revoked, apparently due to his arrest. Document #2 at 5. He alleges that Harness and Matus submitted false police reports and testified against him falsely in his parole revocation hearing. *Id*. at 6. He has not, however, provided any evidence as to what testimony was presented against him in the parole revocation hearing.

While no evidence of the parole proceedings has been provided, the police reports are part of the record, as are the dash-cam video and audio recordings by the police on the evening of the arrest.

Smith's arrest stemmed from a report of a hit-and-run accident in Jacksonville, Arkansas, at approximately 9:40 p.m., on June 9, 2014. The report indicated that the perpetrator was a black male driving a Cadillac or DeVille style automobile. Document #71-2 at 2; Document #71-3. Moments later, Harness saw a Cadillac similar to the one reported by the victim of the hit-and-run accident and initiated a traffic stop. The video from Harness's dash camera shows the Cadillac making a right turn with the taillights visible; they were not illuminated. After Harness turned on his blue lights, the driver of the Cadillac, who later was identified as Smith, drove to a nearby Sonic drive-in and stopped. Harness approached and informed Smith that his brake lights were not working. Harness's statement that the brake lights were not working was a misstatement. His report correctly states that the taillights were not working. Document #71-4 at 1. Matus came to the scene while Harness was conducting the traffic stop. During the course of the conversation between Smith and Harness, Smith volunteered that his driver's license was suspended. Smith's vehicle showed

evidence of having been in a collision. Document #71-5. Smith explained that he had been the victim of a hit-and-run accident. When asked why he left the scene of the accident, Smith said that he was trying to drive to a gas station. When an officer responded that he had driven past two gas stations, Smith replied that he had driven past only one gas station.

Smith complained that he had been injured in the accident, so EMTs came to the scene, and Smith was transported to a local hospital. At the hospital, Smith was diagnosed with a muscle strain and released with after-care instructions, which he refused to sign. Document #71-6.[2] Audio recordings of events at the hospital show that Smith was loud, belligerent and uncooperative toward the officers and the medical personnel, yelling and shouting profanities at them repeatedly over an extended period of time.

Harness attempted to perform a breathalyzer test. To ensure that consent was knowingly given, he attempted to read to Smith the rights form that Smith was to sign. The audio recording indicates that the officers repeatedly told Smith that he needed to open his eyes so that they could make sure that he was awake, but he repeatedly closed his eyes. Eventually, they ceased trying to read the form to him and asked him to sign it, but he refused. While refusing to sign the form agreeing to a breathalyzer test, Smith repeatedly shouted that he was not intoxicated and that they should have to prove that he was by giving him a breathalyzer test before they could arrest him. At one point on the audio recording, a man approached Smith and attempted to draw blood, stating that

---

[2] Smith's initial complaint alleged that the defendants were deliberately indifferent to his medical needs. It appears that Smith has abandoned that claim. In any event, the undisputed facts show that the defendants responded to Smith's claims of injury by taking him to a hospital where he was treated and released, so any claim of deliberate indifference to summary judgment could not survive summary judgment.

he was a lab technician. Smith refused and insisted on seeing a doctor. Another man came and identified himself as a doctor, but Smith still refused to allow blood to be drawn.

After Smith was released from the hospital, he was transported to the Jacksonville Police Department. As mentioned above, he was charged with several misdemeanor offenses. Those charges eventually were dismissed. Smith's parole, however, was revoked. At this time, he is incarcerated in the Arkansas Department of Correction.

### III.

**A.     Probable Cause for the Traffic Stop.**

That Smith's taillights were not turned on when he was driving after dark was a traffic violation. Ark. Code Ann. § 27-36-204. "Any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994). Therefore, Harness had probable cause to conduct the traffic stop.

**B.     Probable Cause for the Arrest.**

In deciding whether probable cause exists for an arrest without a warrant, courts consider whether under all of the circumstances the facts would justify a reasonably cautious law enforcement officer in believing that the person being arrested has committed or was committing an offense. *Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir. 2010). Evidence supporting probable cause does not need to rise to the same level as evidence that would support a conviction. *Adams v. Williams*, 407 U.S. 143, 149, 92 S. Ct. 1921, 1924, 32 L. Ed. 2d 612 (1972). "The fact that the person arrested was later found innocent is not material." *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013).

Smith's statements and conduct after he was stopped gave probable cause for Harness and Matus to institute an arrest. As noted, Smith admitted that he was driving on a suspended license,

which is a misdemeanor. Ark. Code Ann. § 5-65-105. He appeared to be intoxicated and admitted that he had been drinking, which gave the officers probable cause to arrest him for DWI. *Fisher v. State*, 2013 Ark. App. 301 at 8, 427 S.W.3d 743, 748. His behavior at the hospital was certainly disorderly. *Johnson v. State*, 343 Ark. 343, 347-49, 37 S.W.3d 191, 194-95 (2001). He refused to submit to a breathalyzer test, even though he insisted that the officers give him one, which also is a violation. Ark. Code Ann. § 5-65-205. The report of a hit-and-run accident, the fact that Smith's vehicle was similar to the description of the suspect's vehicle, the fact that Smith's vehicle evidently had been involved in a collision, and the fact that Smith claimed that he had been in a hit-and-run accident in which he was the victim (which he failed to report before being stopped) gave the officers probable cause to believe that Smith was guilty of leaving the scene of an accident. *See* Ark. Code Ann. § 27-53-101-103. Abundant probable cause existed for Smith's arrest.

**C.     Smith's Claims Against the City.**

As noted, Smith named the Jacksonville Police Department as a defendant. The Jacksonville Police Department is not an entity capable of being sued and therefore could be dismissed on that basis. *Dean v. Barbara*, 951 F.2d 1210, 1214 (8th Cir. 1992). The defendants, instead, have argued that Smith cannot recover from the City of Jacksonville because, first, there is no underlying constitutional violation, and, second, he has no evidence that a municipal policy or custom was the moving force behind the unconstitutional violation. Those arguments are correct. *Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573, 89 L. Ed. 2d 806 (1986); *Monell v. Dep't of Soc. Serv's*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978). To the extent that Smith is attempting to sue the City of Jacksonville, his complaint must be dismissed because he has

no evidence of an underlying constitutional violation and no evidence that a municipal policy or custom was the moving force behind any constitutional violation.

**D.     False Imprisonment.**

Smith contends in his brief in response to the motion for summary judgment that false arrest and false imprisonment are separate torts, and that even if the officers had probable cause to arrest him, the fact that he has continued to be imprisoned, allegedly without cause, is grounds for a claim against the defendants.  The defendants, however, have no authority over Smith's current incarceration.  Smith is held by the Arkansas Department of Correction, not by the City of Jacksonville or any of the defendants.  As noted, Smith was on parole at the time of the arrest, and his parole was revoked.  Smith's claim that he is being falsely imprisoned cannot be the basis for damages because the decision to revoke parole has not been set aside. *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994); *Newmy v. Johnson*, 758 F.3d 1008 (8th Cir. 2014).  And his claim for an order directing that he be released cannot be the basis for a section 1983 claim; such a claim must be presented in a habeas petition. *Preiser v. Rodriquez*, 411 U.S. 475, 479, 93 S. Ct. 1827, 1831, 36 L. Ed. 2d 439 (1973) (release from prison is not a remedy available under the Civil Rights Act).

**E.     Defamation.**

To establish a claim of defamation, Smith has to show that he sustained damages, that the defendants published a false statement concerning him, that the statement was defamatory, that the defendants acted with knowledge that the statement was false, and that the publication of the statement was a proximate cause of damages. *Calvary Christian Sch., Inc. v. Huffstuttler*, 367 Ark.

117, 131, 238 S.W.3d 58, 69 (2006). Smith has not shown that the officers made a false statement about him.

**F.     Outrage.**

To establish a claim for outrage, Smith would have to show, among other things, that the conduct of the defendants was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized society. *Crockett v. Essex*, 341 Ark. 558, 563, 19 S.W.3d 585, 589 (2000). He has presented no evidence of conduct that would meet this standard.

## CONCLUSION

Courtney Smith has presented no evidence that the defendants violated any of his constitutional rights or that they committed any tort against him. All of Smith's claims are dismissed with prejudice. The Court certifies that an *in forma pauperis* appeal would not be taken in good faith.[3]

IT IS SO ORDERED this 19th day of January, 2017.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[3] The Court thanks Mr. Francis for accepting the appointment to represent the plaintiff and for doing so zealously. Mr. Francis is hereby relieved of any further obligation in this case.